IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE, TENNESSEE

| | |
|---|---|
| SIEMENS ENERGY AND AUTOMATION, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. _____ |
| CONTROL TECHNOLOGY, INC., | ) ) ) |
| Defendant. | ) |

## COMPLAINT

Comes Plaintiff, Siemens Energy and Automation, Inc. ("Siemens"), and for its Complaint against the above-named CTI states as follows:

### I. PARTIES

1. Siemens is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 3333 Old Milton Parkway, Alpharetta, Georgia 30005.

2. Control Technology, Inc. ("CTI"), on information and belief, is a corporation organized and existing under the laws of the State of Tennessee, with its principal place of business located at 5734 Middlebrook Parkway, Knoxville, Tennessee 37921.

### II. JURISDICTION AND VENUE

3. This is an action against CTI for claims of trademark infringement arising under the Lanham Act, 15 U.S.C. §§ 1114(1)(a), 1125(a) and (c). This Court has federal question

1

jurisdiction over this matter pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a) and (b). CTI's infringing acts have occurred in Tennessee, and CTI's infringing products have been, are being, and/or will be advertised and sold throughout Tennessee, including in this district, as well as elsewhere in the United States.

4. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states with an amount in controversy, exclusive of interest and costs, exceeding the sum of Seventy-Five Thousand Dollars ($75,000.00). Moreover, this Court has pendent jurisdiction because the state and federal claims are derived from a common nucleus of operative facts and considerations of judicial economy dictate that the state and federal issues be consolidated for a single trial.

5. Venue is proper in this Court pursuant to 28 USC § 1391(b) and (c).

### III. FACTUAL BACKGROUND

6. Siemens is a manufacturing company in the business of creating, distributing and selling certain industrial automation and related products. Siemens markets, sells, and otherwise distributes its products and services across the United States, including this judicial district.

7. Included within the industrial automation and related products manufactured, sold and distributed by Siemens across the United States, including this judicial district, is the "505" product line (the "505 Product Line"). The 505 Product Line includes a variety of programmable logic controllers ("PLCs") and related equipment used in a wide variety of industries.

8. The 505 Product Line includes or included numerous modules, including but not limited to local central processing unit ("CPU") modules, remote base control modules, power supply modules, relay modules, analog input/output ("I/O") modules, discrete I/O modules,

temperature modules, vibration modules, counter modules, communications modules, and network modules, as well as bases or racks into which the above modules and other components can be mounted and interconnected.

9. Siemens acquired the 505 Product Line, including the trademarks and goodwill associated therewith, from Texas Instruments on September 30, 1991 (the "Acquisition"). Since the Acquisition, Siemens has continued to manufacture the PLCs and related equipment that constitute the 505 Product Line.

10. In pursuing its business, Siemens makes use of, and owns, a number of trademarks, service marks, copyrighted works, and other forms of intellectual property. In particular, it is the owner of an exclusive right in the "505" Mark, U.S. Reg. No. 3050879, among others, as evidenced by its registration with the United States Patent and Trademark Office.

11. The "505" Mark is, at a minimum, suggestive. It has been continuously used in interstate commerce by Siemens, Siemens has built substantial goodwill with the public regarding the "505" Mark, and the "505" Mark is of great value to Siemens.

12. The "505" Mark is a famous and distinctive mark in the field of industrial automation products, and as a result of long continuous use, advertising, and promotional efforts, it has become "famous" within the meaning of 15 U.S.C. § 1125(c).

13. The 505 Product Line has certain design and packaging elements that have become associated or connected with the 505 Product Line, and serve to identify the 505 Product Line and distinguish it from similar products. These elements are non-functional, and are recognized by the industry and the consuming public as the distinctive trade dress of the 505 Product Line.

14. The trade dress of the 505 Product Line includes, but is not limited to, the consistent, distinctive, and non-functional color and border strip of all racks for the 505 Product Line.

15. The trade dress of the 505 Product Line includes, but is not limited to, the consistent, distinctive, and non-functional color, label font, and module identifier on the bezel or faceplate of all modules for the 505 Product Line.

16. In 1995, Siemens entered into a Purchasing Agreement with CTI, whereby CTI manufactured certain modules in the 505 Product Line on behalf of Siemens, which Siemens then marketed. A copy of the 1995 Purchasing Agreement is attached hereto as **Exhibit A**.

17. Under the Purchasing Agreement, CTI agreed not to duplicate the trademark, logo and private labels of Siemens.

18. The 1995 Purchasing Agreement was terminated effective December 31, 2001.

19. CTI has begun competing with Siemens by manufacturing and selling industrial automation and related products, including various modules and racks, that compete directly with the 505 Product Line. CTI refers to its competing products as the "2500 Series PLC System".

20. CTI began to use the "505" Mark extensively to refer to its own products. On or about April 19, 2005, Siemens sent a letter to CTI demanding that CTI cease and desist its infringing activities. A true and correct copy of the letter is attached hereto as **Exhibit B**. An exchange of communications ensued. In response, CTI made some changes to its documented product identifiers.

21. However, since making those changes, CTI has again begun using Siemens' "505" Mark to refer to its own products in its marketing materials and on its website. CTI

4

identifies its products as "505 products" and states that the year 2006 should see the completion of the remaining CTI products it needs for a complete "505 solution."

22. On its website's homepage, located at www.controltechnology.com, CTI currently states: "A New Beginning for 505! CTI is developing the first totally new 505 CPU designs in 15 years. Our 2500 Series Programmable Controllers will bring exciting new features and performance to 505-based Control Systems."

23. On its website, CTI contains a section with the title "CTI 505 Application Notes". CTI also refers to several of its products using the "505" Mark. For example, CTI states, "The 2500-C200 Series 505 CPU provides discrete, analog, loop, advanced mathematical, and high-speed sequential control capability for your Series 505 control system."

24. In its catalog, which is available through its website, CTI makes the following statements:

> Over these last few years, you've seen a steady stream of new 505 products from CTI. Products which are lower in price and higher in capability than the Siemens® products they replace. Better still, our products employ the latest in electronic component technology so we can continue to manufacture them cost-effectively for years to come. Many of you have switched most or all of your 505 purchases to CTI - and for that we're extremely grateful because it has helped us increase the level of our ongoing development investment.
>
> This year should see the completion of the remaining products we need for a complete 505 solution: 4-Slot Racks, RS-485 RBCs, a Counter-Encoder module, and finally a series of 4 CPUs with exciting new capabilities:
> ☐ At least 2x the execution speed compared to existing CPUs
> ☐ 25%-60% more user memory
> ☐ Built-in Ethernet and USB
> ☐ Built-in SD Flash card for storage of programs and documentation
>
> But even as we near the end of this long development effort, we're making plans for future generations of products based on the 505. Our next major effort will involve extending the 505 technology to new systems more geared toward unit and machine control - applications where the 505 is not cost-effective today. These systems would still be compatible with your existing 505 programs and

5
Case 3:06-cv-00582   Document 1   Filed 06/07/06   Page 5 of 15 PageID #: 35

programming [sic] tools. We'd welcome your input on requirements for these products, so if you have ideas, please call us.

As you can see, we have ambitious plans for the Future of 505. If you're a 505 user, we hope you'll feel secure with CTI's commitment to this product line. If you're buying 505 products from CTI today, we thank you and pledge to continue working hard to earn your future business. If you're not buying CTI products today, we hope you'll consider us at your next opportunity.

25. On information and belief, the new products CTI proposes to introduce this year copy the trade dress of the 505 Product Line. In particular, the CTI products copy the consistent, distinctive, and non-functional color and border strip of all racks for the 505 Product Line, and the consistent, distinctive, and non-functional color, label font, and module identifier on the bezel or faceplate of all modules for the 505 Product Line. The CTI products are advertised and sold throughout Tennessee, including in this district.

26. CTI's actions in infringing upon the "505" Mark and trade dress of Siemens's 505 Product Line, and its introduction of products copying the trade dress of Siemens' 505 Product Line, are willful and deliberate, and have caused and will cause damage and irreparable injury to Siemens. Further damage and irreparable injury will result if CTI is allowed to continue to violate Siemens' rights.

27. CTI's deliberate acts constitute trademark infringement, trade dress infringement, and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114(1)(a) and 1125(a), and the Tennessee Trademark Act, Tenn. Code Ann. § 47-25-512; dilution of Siemens' famous mark and trade dress in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and the Tennessee Trademark Act, Tenn. Code Ann. § 47-25-513; conduct in violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-104, 109; and related common-law claims. Siemens seeks a restraining order and temporary and permanent injunctive relief to halt CTI's

wrongful conduct and an award of damages, as well as attorneys' fees and expenses, for CTI's willful and wanton conduct.

## COUNT I
### Lanham Act-Trademark Infringement

28. Siemens hereby incorporates and re-alleges Paragraphs 1 through 27 as if fully set forth herein.

29. CTI's unauthorized and willful use of Siemens' "505" Mark in connection with its marketing and advertising of its competing products, including fraudulent, misleading and deceptive statements on CTI's web, constitutes use in interstate commerce that infringes Siemens' exclusive rights in its mark, and has and is intended to, or is likely to, cause confusion, mistake or deception as to the origin and authenticity of the products sold and marketed by CTI.

30. Customers and other viewers are or will be confused into believing that they are buying authorized or genuine "505" products.

31. CTI's unauthorized and willful use of Siemens' "505" trademark constitutes direct and/or contributory trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

32. CTI's infringement is willful and reflects its intent to trade on the goodwill and brand recognition associated with Siemens' "505" trademark.

33. CTI's infringement has damaged Siemens in an amount to be determined at trial.

34. CTI's infringement has caused and, unless restrained by this Court, will continue to cause Siemens irreparable injury. Siemens has no adequate remedy at law for CTI's infringement.

7

## COUNT II
### Lanham Act-False Representation

35. Siemens hereby incorporates and re-alleges Paragraphs 1 through 34 as if fully set forth herein.

36. CTI's unauthorized and willful use of Siemens' "505" Mark in connection with its advertising and marketing materials and its web pages described above conveys the misleading commercial impression to the public that CTI's products offered for sale are authorized by, approved by, sponsored by, or are somehow affiliated or connected with Siemens.

37. CTI's misleading use of Siemens' "505" Mark constitutes a false designation of origin and false description and representation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

38. CTI's infringement is willful and reflects its intent to trade on the goodwill and brand recognition associated with Siemens' trademark.

39. CTI's infringement has damaged Siemens in an amount to be determined at trial.

40. CTI's infringement has caused and, unless restrained by this Court, will continue to cause Siemens irreparable injury. Siemens has no adequate remedy at law for CTI's infringement.

## COUNT III
### Lanham Act-Dilution

41. Siemens hereby incorporates and re-alleges Paragraphs 1 through 40 as if fully set forth herein.

42. CTI's unauthorized, intended and willful use of Siemens' "505" Mark in connection with its advertising and marketing materials and its web pages described above has

lessened and will continue to lessen the capacity of Siemens' famous and distinctive "505" Mark to distinguish Siemens' genuine products and services from those of others, and has diluted the distinctive quality of Siemens' famous and well-recognized "505" Mark.

43. CTI's use of Siemens' "505" Mark constitutes dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

44. CTI's actions have damaged Siemens in an amount to be determined at trial.

45. CTI's infringement has caused and, unless restrained by this Court, will continue to cause Siemens irreparable injury. Siemens has no adequate remedy at law for CTI's infringement.

## COUNT IV
## Lanham Act-Trade Dress

46. Siemens hereby incorporates and re-alleges Paragraphs 1 through 45 as if fully set forth herein.

47. The consistent, distinctive, and non-functional color and border strip of all racks for the 505 Product Line has achieved secondary meaning with customers, and constitutes protectible trade dress of Siemens.

48. The consistent, distinctive, and non-functional color, label font, and module identifier on the bezel or faceplate of all modules for the 505 Product Line has achieved secondary meaning with customers, and constitutes protectible trade dress of Siemens.

49. CTI's unauthorized and willful use of Siemens protectible trade dress by copying the color and border strip of racks from the 505 Product Line and the color, label font, and module identifier on the bezel or faceplate of modules from the 505 Product Line on its competing products constitutes use in interstate commerce that infringes Siemens' exclusive

9

rights in its trade dress, and has and is intended to, or is likely to, cause confusion, mistake or deception as to the origin and authenticity of the products sold and marketed by CTI.

50. Customers and other viewers are or will be confused into believing that they are buying authorized or genuine "505" products.

51. CTI's unauthorized and willful use of Siemens' trade dress constitutes direct and/or contributory trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

52. CTI's infringement is willful and reflects its intent to trade on the goodwill and brand recognition associated with Siemens' trade dress.

53. CTI's infringement has damaged Siemens in an amount to be determined at trial.

54. CTI's infringement has caused and, unless restrained by this Court, will continue to cause Siemens irreparable injury. Siemens has no adequate remedy at law for CTI's infringement.

### COUNT V
### Violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.*

55. Siemens hereby incorporates and re-alleges Paragraphs 1 through 54 as if fully set forth herein.

56. CTI has committed unfair and deceptive acts and practices in violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104(b)(27), by engaging in deceptive acts and practices affecting the conduct of trade and commerce by, among other things, making false and misleading statements regarding the source and ownership of goods and services, and infringing trademarks and trade dress of Siemens.

57. As a result of CTI's actions, Siemens has sustained damages in an amount to be determined at trial.

58. CTI's violations of the Tennessee Consumer Protection Act were willful and knowing.

59. Siemens is entitled to recover treble damages, attorneys' fees, and costs from CTI pursuant to Tenn. Code Ann. § 47-18-109.

## COUNT VI
## Tennessee Trademark Act-Trademark Infringment
## Tenn. Code Ann. § 47-25-501, *et seq.*

60. Siemens hereby incorporates and re-alleges Paragraphs 1 through 59 as if fully set forth herein.

61. CTI's unauthorized and willful use of Siemens "505" Mark in connection with its marketing and advertising of its competing products, including fraudulent, misleading and deceptive statements on CTI's web, constitutes use, sale or other distribution in the State of Tennessee that infringes Siemens' exclusive rights in its mark, and has and is intended to, or is likely to, cause confusion, mistake or deception as to the origin and authenticity of the products sold and marketed by CTI.

62. Customers and other viewers are or will be confused into believing that they are buying authorized or genuine "505" products.

63. CTI's unauthorized and willful use of Siemens' "505" trademark constitutes direct and/or contributory trademark infringement in violation of Tenn. Code Ann. § 47-25-512.

64. CTI's infringement is willful and reflects its intent to trade on the goodwill and brand recognition associated with Siemens' "505" trademark.

65. CTI's infringement has damaged Siemens in an amount to be determined at trial.

66. CTI's infringement has caused and, unless restrained by this Court, will continue to cause Siemens irreparable injury. Siemens has no adequate remedy at law for CTI's infringement.

## COUNT VII
### Tennessee Trademark Act-Injury to Business Reputation; Dilution
### Tenn. Code Ann. § 47-25-501, *et seq.*

67. Siemens hereby incorporates and re-alleges Paragraphs 1 through 66 as if fully set forth herein.

68. CTI's unauthorized, intended and willful use of Siemens' "505" Mark in connection with its advertising and marketing materials and its web pages described above has lessened and will continue to lessen the capacity of Siemens' famous and distinctive "505" Mark, which is famous in the State of Tennessee, to distinguish Siemens' genuine products and services from those of others, and has diluted the distinctive quality of Siemens' famous and well-recognized "505" Mark. CTI has intentionally and willfully traded on the reputation associated with Siemens' "505" Mark.

69. CTI's use of Siemens' "505" Mark constitutes dilution in violation of Tenn. Code Ann. § 47-25-513.

70. CTI's actions have damaged Siemens in an amount to be determined at trial.

71. CTI's infringement has caused and, unless restrained by this Court, will continue to cause Siemens irreparable injury. Siemens has no adequate remedy at law for CTI's infringement.

12

## COUNT VIII
## Common Law-Unfair Competition

72. Siemens hereby incorporates and re-alleges Paragraphs 1 through 71 as if fully set forth herein.

73. CTI's unauthorized, intended and willful use of Siemens' "505" Mark in connection with its advertising and marketing materials and its web pages described above has lessened and will continue to lessen the capacity of Siemens' famous and distinctive "505" Mark, which is famous in the State of Tennessee, to distinguish Siemens' genuine products and services from those of others, and has diluted the distinctive quality of Siemens' famous and well-recognized "505" Mark. CTI has intentionally and willfully traded on the reputation associated with Siemens' "505" Mark, and has infringed upon the "505" Mark and the trade dress of Siemens.

74. CTI's use of Siemens' "505" Mark and its distinctive trade dress constitutes the tort of unfair competition.

75. CTI's actions have damaged Siemens in an amount to be determined at trial.

76. CTI's infringement has caused and, unless restrained by this Court, will continue to cause Siemens irreparable injury. Siemens has no adequate remedy at law for CTI's infringement.

WHEREFORE, based upon the foregoing, Siemens prays for the following:

1. That process issue and be served upon CTI requiring it to answer this Complaint within the time and manner prescribed by law.

13
Case 3:06-cv-00582   Document 1   Filed 06/07/06   Page 13 of 15 PageID #: 43

2. A temporary restraining order, followed by a preliminary injunction, and then a permanent injunction enjoining CTI, its officers, partners, agents, subcontractors, servants, employees, subsidiaries and related companies or entities, and all others acting in concert or participating with them or with actual notice of such order, from using, copying, or displaying any of Siemens' trademarks or trade dress.

3. Expedited discovery from all entities involved with or affected by CTI's deceptive activities.

4. An award of actual damages, in an amount to be determined at trial, to the fullest extent allowed under 15 U.S.C. § 1117 and Tenn. Code Ann. § 47-25-514, or, in the alternative, an award of statutory damages pursuant to the Lanham Act.

5. An award of treble damages pursuant to Tenn. Code Ann. § 47-18-109, § 47-25-514(a) and 15 U.S.C. § 1117.

6. An award of punitive damages for CTI's fraudulent, intentional, and malicious conduct.

7. An award of costs and reasonable attorneys' fees to the fullest extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117; and Tenn. Code Ann. § 47-18-109, § 47-25-514(a).

8. An award of prejudgment interest at the highest rate prescribed by law.

9. The cost of this case be taxed against CTI.

10. Such other and further relief as this Court deems equitable and just.

Respectfully submitted,

*[signature]*

W. Edward Ramage, Esq. (TN Bar No. 16261)
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, P.C.
211 Commerce Street, Suite 1000
Nashville, Tennessee 37201
(615) 726-5771 (telephone)
(615) 744-5771 (facsimile)
eramage@bakerdonelson.com

ATTORNEYS FOR SIEMENS ENERGY AND
AUTOMATION, INC.